883 F.2d 75
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Helen ROBINSON, Personal Representative of the Estate of
William Robinson, Deceased, Plaintiff-Appellant,
v.
The TOWNSHIP OF WATERFORD, Waterford Township Police
Department, William Stokes, Officer Bailey, Officer T.
Tarpening, Peter Donlin, Walter Bedell, the County of
Oakland, Oakland County Sheriff's Department, and Johannes
Spreen, Defendants-Appellees.
 No. 84-1579.
 United States Court of Appeals, Sixth Circuit.
 Aug. 18, 1989.
 
 Before NATHANIEL R. JONES, MILBURN and BOGGS, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 This case involves an action under 42 U.S.C. Sec. 1983 against officials of Waterford Township and Oakland County for injuries arising from the arrest, imprisonment and subsequent death of William Robinson. Plaintiff-Appellant, Helen Robinson, as personal representative of her husband's estate, appeals various orders of the district court made during the course of the action granting summary judgment in favor of certain of the defendants before the case went to the jury. She also appeals the award of attorney fees granted certain of the defendants, various evidentiary rulings made during the course of the trial, and certain parts of the jury verdict as against the weight of the evidence. We reverse several of the district court's orders and remand to the district court for further proceedings in accordance with this opinion.
 
 
 2
 * This case arises out of a tragic series of events which began over the Memorial Day week-end in 1980 at the Sears Department store in Pontiac Mall, located in Waterford Township, Oakland County, Michigan. William Robinson was a retired factory worker who suffered from Alzheimer's Disease, or Organic Brain Syndrome. He was forgetful and could not communicate easily. His urine and bowels were incontinent and he could not keep himself clean. As a result he exhibited a strong and noticeably offensive body odor. He frequently mumbled to himself and chewed on foreign objects. He spent most of his time wandering the streets and local shopping malls, particularly the Pontiac Mall. His strange behaviour and strong body odor attracted attention from shoppers, and did not make him popular with shopkeepers. Sometimes he would order coffee or food at a cafeteria and would not be able to pay for the purchase. The Waterford Township police were alerted on several occasions. Their usual response was to escort Mr. Robinson home, or to a local shelter such as the Pontiac Mission or the Salvation Army. On a few occasions, they merely transported him to the Waterford Township boundary and dropped him outside the city limits.
 
 
 3
 On Saturday, May 24, 1980, William Robinson wandered into the cafeteria inside the Sears store. According to the testimony of Gregory Palmer, a security guard at Sears, Mr. Robinson wandered into a restricted area of the store and was asked to leave. Later that day, he walked through the food service line at the Sears cafeteria, removing bread from sandwiches and putting it in his pockets. He got a cup of coffee and walked past the cashier without paying, although he asked several customers for money. He then sat down at a cafeteria table and poured sugar into his coffee and onto the table. At this point, the security guard, Mr. Palmer, requested that Mr. Robinson leave the store. When Mr. Robinson did not depart, Mr. Palmer called the Waterford Township Police.
 
 
 4
 Corporal Bailey of the Waterford Township Police Department dispatched Officer Timothy Tarpening with instructions to arrest Mr. Robinson. Bailey testified that he made the decision to arrest Mr. Robinson because of the problems they had had with him all week, and because the police had more important things to do over the holiday week-end than to transport Robinson back and forth. He admitted that he knew of no warrant for Robinson's arrest, and Robinson has done nothing in his presence. Bailey stated that he thought that Robinson would get adequate care at the County Jail.
 
 
 5
 Officer Tarpening did arrest Mr. Robinson, charging him with harassment under Sec. 5.3 of Waterford Township Ordinance No. 87, which deals with various types of disorderly conduct. Mr. Robinson was taken to the Oakland County Jail. Shortly thereafter, Corporal Bailey sent a note to the judge to whom Robinson's case was assigned, asking him to sentence Robinson to the maximum 90-day sentence if he were found guilty. Mr. Robinson was arraigned before this judge on Tuesday, May 27, 1980, the day after Memorial Day. The record indicated that he did not understand why he was there or the nature of the charge against him. The judge set bond at $1,000.
 
 
 6
 Mr. Robinson remained in the Oakland County jail, awaiting trial on a charge with a maximum 90-day sentence, for 137 days. During this period, he received no medical treatment and was not bathed or showered. Despite requests to the police department, Mrs. Robinson did not find out that her husband was in jail for approximately 3 to 4 weeks after his arrest. Mr. Robinson eventually was found incompetent to stand trial. He then was hospitalized at a local hospital and later transferred to the Veteran's Administration Hospital in Battle Creek. He died there on October 15, 1981, after choking on some food.
 
 
 7
 Mrs. Robinson brought suit against the Township of Waterford, the Waterford Township Police Department, Chief of Police William Stokes, Officers Bailey and Tarpening, Waterford Township Prosecutors Peter Donlin and Walter Bedell, the County of Oakland, the Oakland County Sheriff's Department, and Sheriff Johannes Spreen (defendants). She accused the defendants of acts and conspiracies allegedly resulting in the false arrest and imprisonment of Mr. Robinson, and in the injuries from lack of medical treatment and hygiene while in jail. She further claimed that the defendants violated Mr. Robinson's rights by maliciously initiating and continuing a criminal prosecution in the absence of probable cause. She requested compensatory and punitive damages for Mr. Robinson's injuries under 42 U.S.C. Sec. 1983.
 
 
 8
 The defendants filed, and the court granted, a series of pre-trial motions to dismiss and for summary judgment, from which Mrs. Robinson now appeals. Oakland County's motion to dismiss the claim against the County was granted on August 8, 1982. On December 23, 1982, the district court granted a motion for summary judgment on behalf of Peter Donlin and Walter Bedell on the basis of prosecutorial immunity. The court granted summary judgment to the Waterford Township Police Department and Police Chief William Stokes on April 11, 1983. The Waterford Township Disorderly Conduct Ordinance was held to be constitutional on September 21, 1983; and Waterford Township's motion for summary judgment was therefore granted on November 23, 1983.
 
 
 9
 The remaining defendants, namely Officers Bailey and Tarpening, the Oakland County Sheriff's Department and Sheriff Spreen, defended in a jury trial held in December 1983. On December 22, 1983, the district court granted Sheriff Spreen's motion for a directed verdict on the conspiracy charges, but denied the motion as to the alleged due process violations based on deliberate neglect and indifference. The court also directed a verdict for Corporal Bailey and Officer Tarpening on the issues of conspiracy, deliberate indifference, and the pendent state law claim of malicious prosecution, but not as to their liability for false arrest or imprisonment or punitive damages. The jury returned a verdict in favor of Corporal Bailey and Officer Tarpening, but found Sheriff Spreen liable for $300,000 in compensatory damages and $400,000 in punitive damages. Mrs. Robinson accepted a remittitur of $300,000, which was ordered by the district court, rather than pursuing a new trial. Judgment was entered on January 23, 1985. The sheriff did not appeal. The district court awarded attorney fees of $13,333.50 to prevailing defendants Waterford Township Prosecutors Peter Donlin and Walter Bedell and Waterford Township under 42 U.S.C. Sec. 1983.
 
 II
 
 10
 Mrs. Robinson first appeals the district court's holding that Waterford Township Ordinance No. 87, Sec. 5.3 was not unconstitutionally vague as applied to Mr. Robinson's conduct. Section 5 of the Disorderly Conduct Ordinance prohibits various types of harassing conduct as follows:
 
 
 11
 5.0 HARRASSMENT [sic]. A person commits the offense of harrassment[sic] if, with intent to harass, annoy or alarm another person he or she:
 
 
 12
 5.1 Strikes, shoves, kicks or otherwise touches a person or subjects him or her to physical contact.
 
 
 13
 5.2 Follows a person in or about a public place or places.
 
 
 14
 5.3 Engages in a course of conduct or repeatedly commits acts that alarm or seriously annoy another person, and which acts or conduct serve no legitimate purpose.
 
 
 15
 5.4 Contributes to the deliquency of a minor by any act, or by any word, shall contribute toward, cause or tend to cause any minor child under the age of seventeen (17) to become delinquent or neglected so as to come under the Juvenile Division of the Probate Court, whether or not such child shall in fact be adjudicated a ward of the Probate Court.
 
 
 16
 Mr. Robinson was charged under Sec. 5.3 of the ordinance.
 
 
 17
 The district court held that this ordinance was not unconstitutionally vague or overbroad in an opinion issued from the bench on September 21, 1983. The court distinguished this ordinance from the ordinance before the Supreme Court in Coates v. City of Cincinnati, 402 U.S. 611 (1971), which made it a crime for "three or more persons to assemble ... on any of the sidewalks ... and there conduct themselves in a manner annoying to persons passing by...." The Supreme Court held that the Cincinnati ordinance was "unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct." Id. at 614. The district court found that Sec. 5.3 of the Waterford Township ordinance was distinguishable because of the requirements that the conduct be repeated, that it be intentional, and that it not be for any legitimate purpose.
 
 
 18
 * We agree with the district court that the ordinance is not unconstitutionally overbroad because it does not reach constitutionally protected conduct. The ordinance is not applicable to speech or other exercise of first amendment rights, for such activities would come within the exception for serving a legitimate purpose.
 
 
 19
 However, our conclusion that the ordinance is not overbroad does not resolve the question of its vagueness. Vagueness and overbreadth analyses are often inextricably interwoven, particualarly in first amendment jurisprudence; however, they remain logically independent doctrines. Stone, Seidman, Sunstein & Tushnet, Constitutional Law 1043 (1986).
 
 B
 
 20
 The Supreme Court has established a dual rationale for the void-for-vagueness doctrine of the due process clause:
 
 
 21
 A penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.
 
 
 22
 Kolender v. Lawson, 461 U.S. 352, 357 (1983). Fundamental fairness requires that persons of common intelligence not be compelled to guess at their peril whether or not their conduct may fall within the reach of a criminal statute. Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972); Connally v. General Construction Co., 269 U.S. 385, 391 (1926). Criminal statutes must draw reasonably clear lines between behaviour which is forbidden and that which is not. Smith v. Goguen, 415 U.S. 566, 574 (1974).
 
 
 23
 The requirement that criminal statutes delineate clear standards of behaviour serves two purposes: it provides fair warning to citizens of the consequences of their conduct; and it also prevents arbitrary or discriminatory enforcement of the criminal law. The Supreme Court has recognized
 
 
 24
 that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine--the requirement that a legislature establish minimal guidelines to govern law enforcement." Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilictions."
 
 
 25
 Kolender, 461 U.S. at 35 (citations omitted).
 
 
 26
 We agree with the district court's determination that Sec. 5.3 of the Waterford Township Disorderly Conduct Ordinance is constitutional under both rationales supporting the void-for-vagueness doctrine. The ordinance gave a reasonable person fair notice that his conduct might fall within the reach of the statute,[1] and did not allow the Waterford Township Police to enforce the ordinance against him in an arbitrary manner.
 
 
 27
 It is true that the ordinance is not overly specific regarding what conduct is proscribed. The ordinance makes it a crime to "engage in a course of conduct or repeatedly commit acts that alarm or seriously annoy another person...." The Supreme Court held the disorderly conduct statute in Coates, 402 U.S. 611, unconstitutionally vague because the word "annoy" was the only word used to define or limit the offense. The Court rejected the Ohio Supreme Court's reliance on the well-understood dictionary definition of the word. It held the statute vague because:
 
 
 28
 Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, men of common intelligence must necessarily guess at its meaning.
 
 
 29
 402 U.S. at 614. Neither Waterford Township nor the Michigan state courts has made any effort to construe the terms "alarm" or "annoy" in such a manner as to limit their inherent vagueness. Conduct which "seriously annoys" is no less vague a concept than conduct which "annoys."
 
 
 30
 In addition, the ordinance is not limited to a specific type of conduct or to conduct which takes place within a particular context, either of which limitation might help to lessen its vagueness. For example, the Supreme Court upheld an anti-noise ordinance, stating that "no person ... adjacent to ... a school ... in session ... shall willfully make ... any noise or diversion which disturbs or tends to disturb the peace or good order of such school session ..." against a vagueness challenge in Grayned v. City of Rockford, 408 U.S. 104 (1971). The Court held that the ordinance was sufficiently precise because the conduct was prohibited at a fixed place at fixed times, finding that "given this 'particular context,' the ordinance gives 'fair notice to whom [it] is directed.' " Id. at 112. Similarly, the Fifth Circuit has upheld a federal statute, 18 U.S.C. Sec. 112, specifically prohibiting harassment of foreign officials because the statute delineated a particular context. CISPES v. F.B.I., 770 F.2d 468, 476-77 (5th Cir.1985).
 
 
 31
 However, Waterford Township argues, and we agree, that the ordinance is saved from a vagueness challenge because of the specific intent requirement. The Supreme Court repeatedly has recognized that a scienter requirement may save a statute that might otherwise be unconstitutionally vague. Boyce Motor Lines v. United States, 342 U.S. 342 (1951); Screws v. United States, 325 U.S. 91, 101-103 (1945). We have held that "the effect of the scienter standard on the vagueness ... of a statute must be examined on a case-by-case basis in the context of the particular statute at issue." Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916, 934 (6th Cir.1980), vacated and remanded on other grounds, 456 U.S. 968 (1982).
 
 
 32
 The intent requirement in the Waterford Township ordinance saves the ordinance from a vagueness challenge. In Screws v. United States, 325 U.S. 91, 103 (1945), the Supreme Court clearly stated that "a requirement of a specific intent to [violate a statute] saves the Act from any charge of unconstitutionality on the grounds of vagueness." This court has recently followed that rule, stating that an "explicit intent requirement saves [a] statute from [a] claim of vagueness." United States v. 57,261 Items of Drug Paraphernalia, 869 F.2d 955, 957 (6th Cir.1989). That case also notes that Record Revolution is no longer good law on vagueness. Ibid. (citing Village of Hoffman Estates v. The Flipside, 455 U.S. 489 (1982)). Further, other courts have noted that "[t]he Supreme Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea," or intent. United States v. Stewart, 872 F.2d 957, 959 (10th Cir.1989).
 
 
 33
 The ordinance challenged here contains an explicit requirement of a specific intent to annoy others. The only case striking down a disorderly conduct statute despite a clear intent requirement is Kramer v. Price, 712 F.2d 174 (5th Cir.1983), which illustrates quite well the faults of such an approach. In that case, a panel of the 5th Circuit held, 2-1, that a statute quite similar to the Waterford Township ordinance was unconstitutional on its face. Thus, the panel prevented the prosecution of a woman who mailed to the wife of her ex-boyfriend, newly arrived home from the hospital with their new baby, a solicitation announcing: "Baby Problem Solved!--with this beautiful ALL METAL CASKET-VAULT COMBINATION CRYPT a CRIB."
 
 
 34
 Despite the outrageous and despicable nature of this conduct, the majority held that any use of words such as "harass or annoy" was inherently vague, as not specifying the sensitivity by which "annoy" could be measured. Judge Rubin, in a well-reasoned dissent, pointed out the importance of an intent requirement, as laid out in the cases cited above:
 
 
 35
 What is unlawful is not a communication that might offend any of the myriad of persons who passes, regardless of the communicator's purpose; the statute limits unlawful conduct to what not only "may" but is also intended to annoy...."
 
 
 36
 Id., at 180.
 
 
 37
 The panel opinion subsequently was vacated, and an ensuing en banc decision, 723 F.2d 1164 (5th Cir.1984), upheld the lower court's dismissal of the action against the mailer, "but without approving or adopting its rationale." In keeping with Supreme Court precedent, as well as prior case law in this and other jurisdictions, and Judge Rubin's opinion, we hold that section 5.3 of the Waterford Township ordinance is not unconstitutional on its face. Accordingly, we affirm the decision of the district court.[2]
 
 III
 
 38
 The district court granted summary judgment in favor of Oakland County, holding that the county could not be vicariously liable for the abuses of the sheriff's department. However, this decision was reached before publication of our opinion in Marchese v. Lucas, 758 F.2d 181 (6th Cir.1985), cert. denied, 107 S.Ct. 1369 (1987). Accord Dorsey v. City of Detroit, 858 F.2d 338 (6th Cir.1988); Parker v. Williams, 855 F.2d 763 (6th Cir.1988). In Marchese, we held Wayne County liable for the actions of its sheriff's department because the sheriff makes police policy for the county even though under the Michigan constitution the county cannot control the sheriff. Marchese, supra. However, Oakland County and plaintiff reached a settlement resulting in an agreed dismissal of the appeal against Oakland County. Thus, we have no occasion to consider this issue further.
 
 IV
 
 39
 The district court granted summary judgment to town prosecutors Peter Donlin and Walter Bedell, holding that they enjoyed absolute immunity from prosecution. Prosecutors have absolute immunity for actions carried out in their role as advocates, but not necessarily for actions which are purely administrative in nature. Imbler v. Pachtman, 424 U.S. 409 (1976). Mrs. Robinson argues that the prosecutors' failure to bring Mr. Robinson to trial or release him after 90 days was an administrative decision for which Donlin and Bedell should not enjoy immunity.
 
 
 40
 We agree with the district court that scheduling cases is part of the prosecutor's role as advocate. "The determination as to when the state is ready to proceed in the trial of a given case is one in which the prosecutor must be free to exercise ... unfettered discretion." Cribb v. Pelham, 552 F.Supp. 1217 (D.S.C.1982). Accord Joseph v. Petterson, 795 F.2d 549 (6th Cir.1986); Andree v. Ashland County, 818 F.2d 1306 (7th Cir.1987). Thus, we hold that the prosecutors enjoy absolute immunity under Imbler with respect to the scheduling of cases and therefore affirm the order of the district court.
 
 V
 
 41
 * Mrs. Robinson charged in her complaint before the district court that a conspiracy existed between Corporal Bailey, Officer Tarpening and the municipal judge to deprive Mr. Robinson of his constitutional rights by arresting him without probable cause and confining him as long as possible. Mrs. Robinson argued that evidence of the conspiracy was found in Corporal Bailey's instructions to Officer Tarpening to arrest Mr. Robinson before he had been to the scene, Officer Tarpening's carrying out of those instructions despite the fact that no misdemeanor was committed in his presence, Corporal Bailey's note to the judge requesting the maximum sentence, the judge's high bail, and the inordinate length of time Mr. Robinson spent in jail before being found incompetent to stand trial.
 
 
 42
 The district court would not allow the issue of conspiracy go the jury, holding that it would lead to the "rankest speculation" on the jury's part. Instead, the court granted a motion for a directed verdict on behalf of Corporal Bailey and Officer Tarpening on this issue.
 
 
 43
 In considering a motion for a directed verdict, this court must view the evidence in a light most favorable to the party against whom the motion is made, and decide whether reasonable people could come to only one conclusion based on the evidence. Davis v. Sears, Roebuck and Co., 873 F.2d 888, 897 (6th Cir.1989); Coffy v. Multi-County Narcotics Branch, 600 F.2d 570, 579 (6th Cir.1979). Viewing the evidence presented in the record in the light most favorable to Mrs. Robinson, we hold that reasonable people could have concluded that a conspiracy existed. We agree with the reasoning of the Seventh Circuit that:
 
 
 44
 In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators, "[c]ircumstantial evidence may provide adequate proof of conspiracy,...." Thus the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances [that the alleged conspirators] had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives.
 
 
 45
 Hampton v. Hanrahan, 600 F.2d 600, 620 (7th Cir.1979).
 
 
 46
 We therefore reverse the district court's directed verdict in favor of Officers Bailey and Tarpening and remand to allow the issue of conspiracy to be presented to a jury.
 
 B
 
 47
 The jury returned a verdict in favor of Officers Bailey and Tarpening on Mrs. Robinson's claims of false arrest and imprisonment. Mrs. Robinson argues that the jury verdict is against the great weight of the evidence and should be overturned. A jury verdict must be upheld unless it is against the weight of the evidence. United States of America v. Jerkins, 871 F.2d 598, 606 (6th Cir.1989). Based on our examination of the record, we conclude that the jury verdict was not against the great weight of the evidence and accordingly will not be disturbed.[3]
 
 C
 
 48
 The district court directed a verdict in favor of Officers Bailey and Tarpening on the pendent state law claim of malicious prosecution. The directed verdict on this issue must stand. Plaintiff has not met one of the requisite elements of a malicious prosecution claim, namely that the proceedings must terminate in favor of the accused. Fort Wayne Mortgage Company v. Carletos, 95 Mich.App. 752, 757 (1980). A federal court is not the proper forum to seek an exception to this well-established rule of state law.
 
 VI
 
 49
 The district court awarded attorney fees under Sec. 1988 to prevailing defendants town prosecutors Peter Donlin and Walter Bedell. The court also awarded attorney fees to Waterford Township for defending the claim based on the failure to train, but not for its defense of the constitutionality of the ordinance.
 
 
 50
 The decision to award attorney fees is committed to the discretion of the trial judge. 42 U.S.C. Sec. 1988; Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 424 (1978); Tarter v. Raybuck, 742 F.2d 977, 986 (1984). The standard of appellate review of a district court's award of attorney fees to a prevailing party under Sec. 1988 is whether the trial court abused its discretion in making or denying the award. Tarter, 742 F.2d at 986.
 
 
 51
 In Christiansburg, 434 U.S. 412, the Supreme Court set out the standard basis for awarding attorney fees to prevailing defendants in civil rights cases. The Court stated that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Id. at 422. This test should be applied strictly in favor of plaintiffs, and attorney fees should not be too frequently awarded to prevailing defendants in light of the overriding congressional policy of encouraging vindication of rights. Smith v. Smythe-Cramer, 754 F.2d 180, 184 (6th Cir.1986).
 
 
 52
 Accordingly, we hold that the district court abused its discretion in granting attorney fees to the prevailing defendants in this case. The district court must not engage in "post hoc reasoning" by concluding that a plaintiff's suit was frivolous merely because she ultimately does not prevail on the merits. Christiansburg, 434 U.S. at 421-22; Smith 754 F.2d at 183.
 
 
 53
 There can be no doubt that the issues raised in this case were not raised frivolously. For example, although Mrs. Robinson's argument that case scheduling was an administrative function not entitled to prosecutorial immunity did not ultimately prevail, it was not an unreasonable or frivolous argument. The issue had not been finally settled in any circuit by unambiguous case law, and had not been considered at all within our circuit. Likewise, the attorney fees awarded to Waterford Township for defending the claim of municipal liability cannot stand. The record does not support the trial court's conclusion that this claim was frivolous. Although many years have passed since the Supreme Court held that municipalities could be sued as "persons" within the meaning of Sec. 1983 in Monell v. New York City Department of Social Services, 436 U.S. 658 (19789), municipal liability under Sec. 1983 is still an extremely unsettled area of the law. There is case law supporting Mrs. Robinson's argument that some types of inadequate training or supervision can rise to a level sufficient to support Sec. 1983 liability. City of Canton, Ohio v. Harris, 57 U.S.L.W. 4720 (U.S. Feb. 28, 1989); Turpin v. Mailet, 619 F.2d 1242 (2d Cir.1980).
 
 
 54
 Thus, we conclude that the district court applied the Christiansburg standards incorrectly and abused its discretion in awarding attorney fees for defendants. Accordingly, the order of the district court is REVERSED.
 
 VII
 
 55
 The judgment of the district court is AFFIRMED in part and REVERSED in part. The case is REMANDED to the district court for further proceedings in conformity with this opinion.
 
 
 56
 MILBURN, Circuit Judge, concurring.
 
 
 57
 I concur in the result reached by the majority. While I am of the view that the township ordinance is not unconstitutionally vague, I think it presents a close and difficult question.
 
 
 
 [1]
 Because of Mr. Robinson's condition, he may well have been incapable of forming an intent or comprehending what conduct of his might violate a statute. However, those matters go to an individual defense, and do not invalidate the statute on its face
 
 
 [2]
 Mrs. Robinson made a separate argument for municipal liability based on inadequate training and supervision of the police officers. The jury, however, found that officers had acted properly. Because we conclude that the jury verdict was not against the great weight of the evidence, we need not reach the issue of whether the Township could be held liable under the Supreme Court's recent decision in City of Canaton, Ohio v. Harris, 57 U.S.L.W. 4270 (U.S. Feb. 28, 1989), for a failure to train the officers
 
 
 [3]
 The district court allowed testimony from the Sears security guard, Gregory Palmer, and from another security guard, Opal Bledsow, as to previous disruptive incidents with Mr. Robinson. Mrs. Robinson argues that the evidence of similar bad acts should not have been admitted in that it was offered to prove Mr. Robinson's bad character. We agree with the district court that the prior act evidence was properly admissible under Fed.R.Evid. 404(b) not to prove character but to prove that Mr. Robinson in fact violated the ordinance by repeatedly committing annoying acts