FREMONT REORGANIZING
CORP., Plaintiff,

v.

Ronnie DUKE, Ryan Zundel, Bill Wells, Willinevah Richardson, Anthony Peters, American Nationwide Mortgage Co., CBB, Inc. d/b/a Bretlin Home Mortgage, First Escrow Company, LLC, Hardcore Motor Sports, LLC, Hardcore Racing, INC. JS Realty, LLC, Lawyers Escrow Co., Libertytitle and Escrow Services, LLC, MotorCity Financial Services, Nations Title of Ohio, North American Home Funding, Inc., Owner Realty.Com, Premier Mortgage Funding, Inc., Real Estate One, Inc., Andrew Auty, Timothy Baker, Melissa Bastien, Hussein Abdul–Majid Bazzi a/k/a Sam Bazzi, Specialty Holdings, Inc., Alibaydoun, Jay Baydoun a/k/a Jalal Baydoun, Chea Bennett, Morgan Bevensee, Kevin Bos, Lisa Bos, Robert Brierley, Byron Dees, Susan Gendernalik, Hugh Bradley James, David Lara, Harold Larsen, Danny Ley, Patrick Lloyd, Jose Martinez, John Mayer, Kathy McCutcheon a/k/a Kathy Sizemore, April Miller, Collette Millitello, Joseph Millitello, Paul Morris, Adelbert Moss, Bryan Murphy, Danielle Napper, Suzanne Nicholas, Daniel Panko, Kathleen Pounds, Larry Rideout, Ricardo Rodriguez, Frank Ray Schafer, Jr., Jeff Schuck, Rachel Seman, Michael Shilakes, Bryan Sturgeon, Jamie Sweeney, Ronald Talaski, Jr., Mitchell Tomcsik, Nicole Turcheck, Linda Wahler, Donna Walbrook, Paul Whiteside, Jeremy Yalkin, Kassem Zreik, Fidelity National Title Insurance Co., Quotemearate.Com, Inc., Apex Financial Group, Incorporated, d/b/a Aapex Mortgage Corp., Darla Applebee, Robert Appelbey, Eric Broad, Patrick Deguise, Donna Galante, Joseph C. Joseph, Raymond Lara, Jr., Charron McDonald, Jacqueline Napper, Philip McDonald, Bruce Morgan, Paul Nichols, Carlo Palmeri, Ronald Wilson, Larry Yount, Desk Top Appraisal LLC, Keyappraisers.Com LLC, and JP Morgan Chase Bank, Defendants.

Case No. 10–11923.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 12, 2011.

Charles P. Curley, Cynthia H. Hyndman, Robinson Curley & Clayton, P.C., Chicago, IL, Michael C. O'Malley, Kallas & Henk, Bloomfield Hills, MI, for Plaintiff.

Mark E. Phillips, Thomas G. Costello, Lipson, Neilson, Amy L. Gottlieb, Ari M. Charlip, Hertz Schram P.C., David J. Council, Joseph H. Hickey, Marilyn A. Peters, Dykema Gossett PLLC, Bloomfield Hills, MI, Amy E. Schlotterer, Dora A. Wilkerson, Rutledge, Manion, Rabaut, Terry & Thomas, P.C., Dante A. Stella, Dykema Gossett, Detroit, MI, Benjamin J. Henry, Brad B. Aldrich, Aldrich Legal Services, PLLC, Richard G. Convertino, Plymouth, MI, Arthur J. Weiss, Farmington Hills, MI, Larry R. Kipke, Hogan & Kipke, Clinton Township, MI, Christopher A. Sevick, Law Office of Christopher Sevick, PLC, Guy T. Conti, Contilegal, Ann Arbor, MI, Joseph F. Regnier, Regnier & Associates, PLC, Brighton, MI, Timothy P. MacDonald, Howell, MI, Nik Lulgjuraj, Nik Lulgjuraj, PLC, Chelsea, MI, Gary M. Collins, Gary M. Collins, PLLC, Fenton, MI, David B. Forest, Shelby Township, MI, Roy C. Sgroi, Sgroi Law Firm, Livonia, MI, for Defendants.

Darla Applebee, Romulus, MI, pro se.

Robert Applebee, Romulus, MI, pro se.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS BY REAL ESTATE ONE, INC., DENYING MOTION TO DISMISS BY DEFENDANTS TIMOTHY BAKER, KEYAPPRAISERS.COM LLC, AND OWNERREALTY.COM, AND GRANTING MOTION TO DISMISS BY DEFENDANT JP MORGAN CHASE BANK*

DAVID M. LAWSON, District Judge.

Ronnie Duke, it is alleged, masterminded and executed a scheme between 2003 and 2007 to defraud banks and other mortgage lenders of money by creating phony real estate transactions and financing the sales and purchases using fraudulent loan documents. The plaintiff, Fremont Reorganizing Corporation, claims to be a victim of Duke's scheme to the tune of over $20 million. Fremont has brought the present action against companies and individuals it believes joined in and helped perpetuate Duke's scheme, alleging fraud, conversion, negligence, breaches of contract and fiduciary duties, conspiracy, and violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* (RICO). Presently before the Court are motions to dismiss by three groups of defendants who contend that Fremont has not pleaded valid causes of action against them: Real Estate One; Timothy Baker, KeyAppraisers.com LLC, and OwnerRealty.com (the Baker defendants); and JP Morgan Chase Bank. The Court heard oral argument on the motions on February 15, 2011. For the reasons discussed in detail below, the Court now finds that Real Estate One's motions should be granted in part and denied in part, the Baker defendants' motion should be denied, and Chase Bank's motion should be granted.

I.

According to the amended complaint, which is quite detailed (148 pages with 544 numbered paragraphs), plaintiff Fremont Reorganizing Corporation is a California corporation that arose from the bankruptcy of its predecessor, Fremont Investment and Loan Corporation. The company originated subprime residential mortgage loans for sale on the secondary market. Fremont summarized the manner and means of Ronnie Duke's fraudulent scheme in the amended complaint as follows:

75. In general, Duke's mortgage fraud scheme worked as follows: Duke or someone at his direction would locate residential real properties for sale and arrange for a nominal or straw buyer to purchase a property and obtain a loan from a financial institution to finance the purchase. In some instances, the mortgage loan proceeds would be used to actually purchase the property in the name of the straw buyer [ ("straw loans") ].... In other instances, the mortgage loan proceeds were not used to purchase the property at all, but instead were stolen and used to enrich the participants in the scheme [ ("ghost loans") ].... In the case of both straw and ghost loans, Duke and others under his direction and control would create materially false and fraudulent documents in order to obtain mortgage loans, including but not limited to: loan applications, lease agreements, verifications of deposit, purchase agreements, warranty deeds, mortgages, and mortgage notes.

First Am. Compl. ¶¶ 75–89.

Fremont alleges that the straw loans were fraudulent because various defendants inflated the straw buyer's income, asserted that the straw buyer would pay a portion of the down payment when such

funds actually came from other loan proceeds, and falsely identified inflated bank accounts as belonging to the straw buyer. *Id.* ¶¶ 77–79. Duke and other defendants under his direction took control of the properties and rented them to third parties. *Id.* ¶ 80. In the case of ghost loans, no property transfer occurred and the various defendants fraudulently represented that the intended buyer would use the property as either a rental investment or a primary residence; the named seller in those cases was either a straw buyer from another purchase or the actual owner who was unaware of the purported transfer. *Id.* ¶¶ 82–83. The plaintiff alleges that the statements about the transfer, rental income, inflated buyer's income, and temporarily inflated bank account statements were all fraudulent. *Id.* ¶¶ 83, 85–86. Duke and his minions also allegedly used cashier's checks to supply the down payment and subsequently cancelled the checks without transferring funds. *Id.* ¶ 84. The counterfeit warranty deeds purporting to transfer the properties were never filed with the county register of deeds. *Id.* ¶ 87. Various defendants also forged signatures on loan documents and failed to file them with the county register of deeds to secure the lender's security interest in the property. *Id.* ¶ 88. This scheme involved the fraudulent use of the mail and wire systems to submit fraudulent documents to financial institutions and to transfer or cause to be transferred the plaintiff's and other lenders'· funds. *Id.* ¶ 118. The amended complaint separately identifies each transfer by date, amount, accounts, and the defendants directly involved in wiring or mailing fraudulent documents. *Ibid.* None of the transactions directly involve Real Estate One, the Baker defendants, or Chase in those activities. *Ibid.* The amended complaint also alleges that various defendants laundered money—the proceeds obtained from the real estate transfers—through Duke's different corporate entities. *Id.* ¶¶ 119–20. The amended complaint specifically identifies 59 fraudulent loans (17 straw loans and 42 ghost loans) associated with an equal number of real estate transactions.

The amended complaint also identifies individuals and companies who played specific roles in the scheme that included property·locator, recruiter, straw buyer, appraiser, document counterfeiter, loan processor, mortgage broker or loan officer, and closing or issuing agent. *Id.* ¶ 91. The plaintiff alleges that real estate agencies served as vehicles for identifying available properties for use on the mortgage loan applications (defendants *Owner-Realty.com* LLC, Real Estate One, Inc., and JS Realty LLC), *id.* ¶¶ 13–14; mortgage brokers submitted fraudulent loan applications to the lenders (defendants Apex Financial Group, American Nationwide Mortgage Company, CBB Inc., North American Home Funding, Inc., Premier Mortgage Funding, Inc., and *Quotemearate.com* ), *id.* ¶ 15; closing or issuing agents closed the real estate transactions (defendants First Escrow Company LLC, Lawyers Escrow Company, Liberty Title and Escrow Services, MotorCity Financial Services, and Nations Title of Ohio), *id.* ¶ 16; and various individuals worked for each of those organizations and assisted in the fraudulent scheme. *See id.* ¶¶ 10–66.

Ronnie Duke, the lead perpetrator of this scheme, is alleged to have owned several defendant entities, including Hardcore Racing, Inc., Hardcore Motorsports, LLC, and Specialty Holdings, Inc. *Id.* ¶¶ 10–12. Of those, the main instrument through which Duke worked was Specialty Holdings, Inc., a business incorporated in Michigan around December 2001 that was created ostensibly to purchase residential properties, manage the properties, and rent them out. *Id.* ¶ 74. The plaintiff alleges that Specialty Holdings instead

"operated as a vehicle to defraud mortgage lenders." *Id.* ¶ 74, 122. The plaintiff also alleges the existence of a second enterprise, an association-in-fact comprised of "certain" of the individual defendants. *Id.* ¶ 122.

The plaintiff alleges that Baker, by himself and through his companies, was involved in the scheme by submitting fraudulent purchase agreements for transactions involving at least six of the loans Fremont made. *Id.* ¶ 104. The plaintiff also alleges that Baker's companies employed Michael Shilakes, who submitted false documentation on three loans. *Ibid.* Fremont alleges that Real Estate One employed two real estate agents who were deeply involved in the fraudulent scheme: Abdul–Majid Bazzi (a.k.a. Sam Bazzi) and Jamie Sweeney. *See id.* ¶¶ 13, 18–19, 57, 92, 95. Sweeney allegedly located property or submitted fraudulent paperwork or both on the ghost loans listed in paragraphs 102(b), (c), (d), (e), (f), (g), (h), (j), (p), (q), (r), (s), and (pp). *Id.* ¶ 104. Bazzi did the same for the ghost loan identified in paragraph 102(k). *Ibid.* The plaintiff predicates Real Estate One's liability in this case on the conduct of Sweeney and Bazzi. Sam Bazzi and several other individuals have entered guilty pleas to allegations related to their involvement in the scheme, with Bazzi pleading to one count of wire fraud in violation of 18 U.S.C. § 1343.

The plaintiff also alleges that the defendant companies maintained bank accounts at several banks, which they used to receive the mortgage loan proceeds and launder those funds through different entities controlled by Duke, using mail and wire communications. *Id.* ¶¶ 116, 117, 120. The plaintiff alleges that after it received loan documents, it completed wire transfers of the mortgage loan funds into those bank accounts. *Id.* ¶¶ 101–102, 118. Defendant Chase was one of the depository

banks in which Duke and his companies maintained approximately six accounts. *Id.* ¶ 521. Fremont alleges that it wire over $13 million into those accounts, which were used to convert and misdirect to funds to the use of the conspirators. Fremont alleges that the accounts were used to conceal the true nature of the proceeds and the transactions and to launder money. *Id.* ¶ 524. The plaintiff alleges that the accounts displayed unusual activity compared to typical such accounts, which should have put Chase on notice of nefarious activity. *Id.* ¶ 530.

On May 12, 2010, the plaintiff filed its initial complaint against most of the present defendants, alleging violations of RICO as well as several other fraud-based and negligence state law claims. The RICO predicate acts were alleged to be mail and wire fraud and money laundering. On July 19, 2010, defendant Real Estate One filed a motion styled as a motion to dismiss and motion for summary judgment. On October 15, 2010, the plaintiff filed a motion for leave to amend its complaint, seeking to add eighteen new defendants and four counts against existing defendants. The Court heard oral argument on that motion on November 8, 2010 and granted leave to file the amended complaint by November 15, 2010. The Court also ordered the plaintiff to "be mindful of and address the [ ] guidelines" from the Court's RICO Case Management Statement, which requested specific details about the perpetrators, the predicate acts and their relation to a common scheme, the enterprise, the victims, the benefits received, and the harm suffered, in addition to several related items and requests for additional information about other claims in the case. Order [dkt. # 72] at 2. The Court also dismissed without prejudice defendant Real Estate One's motion to dismiss or for summary judgment to the

extent it raised an argument about the applicable statute of limitations.

On November 15, 2010, the plaintiff filed its first amended complaint, totaling nearly 150 pages and raising seventeen counts broken out by the involved defendant, with subcounts for different charges. The counts involved in the motions under consideration are counts 1, 11, 14, 15, 16, and 17. As concerns the moving defendants here, the first count alleges violations of RICO, 18 U.S.C. §§ 1962(c) & (d), common law fraud, civil conspiracy, and aiding and abetting fraud against all defendants except Chase, and the eleventh count alleges substantially similar claims against new defendants added in the first amended complaint, including *KeyAppraisers.com* LLC. Count one also alleges a violation of section 1962(a) against defendants Duke, Hardcore Racing, Hardcore Motorsports, Bill Wells, and Willinevah Richardson. Count fourteen alleges negligence and negligent misrepresentation against *KeyAppraisers.com* LLC and Timothy Baker. Count fifteen alleges negligence and negligent hiring and retention against *OwnerRealty.com*. Count sixteen alleges those same claims against Real Estate One. Count seventeen raises claims against JP Morgan Chase Bank of negligence and aiding and abetting breach of fiduciary duty.

On November 23, 2010, defendant Real Estate One filed a renewed motion to dismiss and then on December 3, 2010 moved to amend its motion to dismiss to attach the relevant documents. Defendants Timothy Baker, *KeyAppraisers.com* LLC, and *OwnerRealty.com* filed a motion to dismiss on December 14, 2010, and defendant JP Morgan Chase Bank did likewise on January 10, 2011. As mentioned, the Court heard oral argument on those motions plus defendant Real Estate One's initial motion to dismiss on February 15, 2011.

## II.

■ Defendants Real Estate One, Timothy Baker, KeyAppraisers.com LLC, OwnerRealty.com, and JP Morgan Chase Bank have moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993).

■ Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 228 (6th Cir.1997) (quoting *Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc.,* 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir.2009).

To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir.2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 129 S.Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 129 S.Ct. at 1949).

 Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir.2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mack Corp.*, 607 F.3d 1102, 1104 (6th Cir.2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir.2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335–36. Further, where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) (holding that plan documents could be incorporated without converting the motion to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 336).

### A. Timothy Baker, KeyAppraisers.com LLC, and OwnerRealty.com

Defendants Baker, KeyAppraisers.com LLC, and OwnerRealty.com move to dismiss the plaintiff's first amended complaint on the ground that the plaintiff did not comply with the part of the Court's November 9, 2010 order allowing the plaintiff to amend its complaint that addressed the specific RICO case statement guidelines. They argue that the failure to comply with the order justifies dismissal under Federal Rule of Civil Procedure 41(a). In a supplemental brief filed without leave of court, these defendants add the afterthought that Rule 12(b)(6) requires dismissal as well.

The Baker defendants contend the amended complaint does not comply with the RICO case guidelines in the following particulars:

- Paragraph 4 of the order required the plaintiff to list the victims and the amount of their injury. Although the plaintiff states that it lost in excess of $20 million, it does not specify other victims or which defendants caused the plaintiff's injury.

- Paragraphs 5(b) and 5(c) required the plaintiff to provide dates and descriptions of the predicate acts and plead fraud with particularity. The plaintiff identifies only the dates and amounts of loan transactions alleged to be involved in the wire and mail fraud counts and alleges the defendants' participation in the enterprise's affairs in paragraphs 118, 192, and 193, but fails to list specific dates, participants, and facts about each event.

- Paragraph 5(f) required a description of how the predicate act forms a pattern of racketeering activity. The Baker defendants argue that the plaintiff submitted conclusory statements that various defendants were engaged in a pattern of racketeering activity, but did not describe the nature of the alleged activity.

- Paragraph 5(g) required a description of the common plan and how the predicate acts formed that common plan. The Baker defendants argue the plaintiff has failed to allege how the "enterprise" it mentions was pursuing a common plan or how Baker fit into that plan; instead, the plaintiff has alleged only conclusory statements that do not identify in detail how the predicate acts related to each other or how the defendants participated in the common plan.

- Paragraph 8 required an explanation of how the alleged predicate acts differ from the standard operating activities of the defendants. The Baker defendants argue that the plaintiff

has not indicated how the defendants' legitimate activities differed from the illegal activity.

- Paragraph 9 required a description of benefits the alleged enterprise received from the alleged racketeering. The defendants assert that the plaintiff has not alleged what benefit the enterprise received.

- Paragraph 17 requiring a list of damages itemized by each defendant. The defendants argue that the plaintiff has not indicated the amount for which each defendant is allegedly liable.

The Court finds no merit in the Baker defendants' arguments. RICO's civil remedy provision states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee...." 18 U.S.C. § 1964(c). The plaintiff alleges violations of subsections 1962(c) and (d) against the defendants who have filed motions to dismiss.

 Subsection 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in" activities affecting "interstate or foreign commerce ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a claim under subsection 1962(c), the plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (footnote omitted); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.2006). Similarly, subsection

1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Under that provision, the plaintiff must "detail[ ] an agreement to jointly undertake specific actions illegalized by RICO," other elements of a conspiracy claim, and the underlying RICO violations. *Pik–Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 890 n. 10 (6th Cir.2000) (citing *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir.1990)). RICO pleadings are to be liberally construed. *Begala v. PNC Bank*, 214 F.3d 776, 781 (6th Cir.2000). However, under Rule 12(b)(6), as presently construed, the court does not accept legal conclusions unsupported by the pleaded facts. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996).

 RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (defining an enterprise as a "group of persons associated together for a common purpose of engaging in a course of conduct"). To make out a claim under section 1962(c), the plaintiff must plead that "the 'enterprise' is the instrument through which illegal activity is conducted." *United States v. Chance*, 306 F.3d 356, 371–72 (6th Cir.2002) (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 258, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). To meet that requirement, the plaintiff must establish:

1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; 2) that the members of the enterprise functioned as a continuing unit with established duties; and 3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.

*Id.* at 372 (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993)). Alternatively, the plaintiff may demonstrate the existence of an "association-in-fact enterprise" by showing: "1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it was engaged." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir.2000), *abrogated on other grounds*, *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). The allegations in the complaint must connect the defendants with the enterprise. *Ray v. General Motors Acceptance Corp.*, No. 92–5043, 1995 WL 151852, at *2–3 (E.D.N.Y. Mar. 28, 1995). The plaintiff also must make out the underlying claim of wrongful or criminal conduct in order to establish that the defendants were engaged in an enterprise. *See Vennittilli v. Primerica, Inc.*, 943 F.Supp. 793, 799 (E.D.Mich.1996).

 To plead a pattern of racketeering activity, the plaintiff must allege at least two predicate acts, although that may not necessarily be sufficient. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir.2008) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238–43, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). When the predicate acts are based on fraud, Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement applies. *Id.* at 356 n. 4. At a minimum, the complaint alleging a RICO claim must state "the nature of the fraud [that] gives rise to the predicate offense." *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir.1987). Under Rule 9(b), "[i]n alleging fraud or mistake a party

must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The plaintiff must "'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993) (quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D.Mich. 1992)); *see also Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir.1992); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (holding that as to each predicate act, the plaintiff must allege "the time, place and contents of the misrepresentation(s)"). Where a plaintiff makes only "loose references to mailings and telephone calls" to support its allegations of mail and wire fraud, but otherwise fails to identify the parties to these transactions, circuit courts have upheld the dismissal of the RICO claims under both Rule 9(b) and RICO itself. *See Jepson Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir.1994) ("without an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established."); *Vennittilli*, 943 F.Supp. at 799 (discussing *Jepson*). The complaint also must identify the person making the alleged misrepresentations or involved in the alleged predicate acts. *Jepson*, 34 F.3d at 1328; *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986); *Vennittilli*, 943 F.Supp. at 799.

The plaintiff alleges predicate acts of mail fraud, wire fraud, and money laundering. A person commits mail fraud if he devises a scheme to defraud, executes the scheme using the mail or causing it to be used, and acts with the intent to defraud. 18 U.S.C. § 1341; *United States v. Jones*, 641 F.3d 706, 710 (6th Cir.2011). Wire

fraud requires similar proof, except that instead of alleging use of the mail to execute the scheme, the plaintiff must allege that the person used or caused to be used a wire communication in interstate commerce in furtherance of the scheme. 18 U.S.C. § 1341; *United States v. Faulkenberry*, 614 F.3d 573, 582 (6th Cir.2010). Money laundering can be proved in a number of ways, but "'concealment money laundering' can be made by alleging that a defendant used proceeds of an illegal activity with knowledge that the funds were derived illegally, and engaged in a transaction designed to conceal the source, ownership or control of the funds." 18 U.S.C. § 1956; *United States v. Warshak*, 631 F.3d 266, 319–20 (6th Cir.2010).

In the amended complaint, the plaintiff has pleaded the elements of a RICO claim and has complied with the Court's RICO case management statement. The plaintiff alleged that Ronnie Duke and others operated Specialty Holdings, Inc., a legitimate corporation conducting business as an investment club, through a pattern of racketeering activities to perpetrate the mortgage fraud scheme. The plaintiff also has alleged that Duke functioned as the president, secretary, and treasurer of Specialty Holdings. The complaint alleges no further members of that enterprise, except to the extent it asserts that every individual defendant is "associated" with the enterprise, *see* Am. Compl. ¶¶ 123–191, but the titles ascribed to Duke demonstrate that he had established duties. The titles also suggest that the members functioned as a continuing unit. The plaintiff has alleged that the enterprise was separate from the pattern of racketeering activity by explaining that Specialty Holdings's standard business operations involved managing and renting property. There is no allegation that Specialty Holdings was directly involved in

any of the fraudulent activities or participated in the mail or wire fraud. Nor has the plaintiff alleged any involvement in money laundering, expressly excluding Specialty Holdings from the list of culpable participants in paragraph 120(c) of the amended complaint. Through these allegations, the plaintiff has maintained the distinction between the "enterprise" and the "person" conducting the affairs of the enterprise. *See, e.g., Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1489 (6th Cir.1989); *Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 29–30 (1st Cir.1986).

 The plaintiff also alleged an association-in-fact comprised of various individuals operating as an enterprise to purchase real estate, through which the various defendants perpetuated the fraudulent scheme. The association-in-fact performed daily activities of buying, renting, and selling real estate, and the defendants conducted other fraudulent acts as part of the pattern of racketeering. The plaintiff alleged that several of the defendants had defined roles in that association, consisting of purchasing, renting, and selling real estate, locating property, drafting documents, obtaining straw buyers, and, ultimately, obtaining financing, all under the direction of defendant Ronnie Duke. *See* First Am. Compl. ¶¶ 74–89, 91–99. The plaintiff alleged that the association-in-fact functioned as a continuing unit as an enterprise apart from the pattern of wrongdoing.

 The amended complaint describes in great detail the predicate acts of wire fraud and money laundering that constituted the pattern of illegal activity through which the business of the enterprises was conducted, identifying the ghost loans and straw loans by date, borrower, and transaction, and defendant. Paragraphs 103 through 115 describe the activities that constituted wire fraud and list the transaction documents that were falsely drafted. The level of detail in the amended complaint satisfies Rule 9(b)'s particularity requirement. Paragraphs 117 through 120 describe the transactions that constituted money laundering. The amended complaint makes specific allegations of fraud against defendant Timothy Baker, alleging that he submitted false purchase agreements for transactions involving specific loans. *See* First Am. Compl. ¶ 104. The plaintiff also identifies transactions in which Baker and KeyAppraisers.com LLC prepared fraudulent appraisals. *See* First Am. Compl. ¶¶ 95, 193(u), 434, 455(q). The plaintiff also alleges that defendant OwnerRealty.com acted through its agents, one of whom was Baker. *See* First Am. Compl. ¶¶ 13(a), 104, 193(p), 195.

The amended complaint contains a list of the victims of the fraud, which included the plaintiff, and alleges the amount of its damages. The plaintiff alleges enterprise liability, so the RICO defendants are each alleged to be responsible for the plaintiff's damages. The amended complaint alleges that the fraudulent scheme was executed using the United States Mail and interstate wire communications, and it alleges *scienter* against the Baker defendants, as well. *See* First Am. Compl. ¶¶ 118, 120.

The Court finds that the plaintiff complied with its RICO case management statement, and the amended complaint states a cognizable RICO claim. Therefore, the Baker defendants' motion to dismiss will be denied.

### B. Real Estate One, Inc.

The claims against defendant Real Estate One include violation of RICO, civil conspiracy, fraud, negligent hiring and negligent retention. The crux of the plaintiff's RICO, civil conspiracy, and fraud claims focuses on the conduct of Abdul-Majid Bazzi and Jamie Sweeney, whom the

plaintiff alleges were Real Estate One employees and Real Estate One insists were independent contractors. Real Estate One argues that an employer cannot be held vicariously liable for the torts of independent contractors, citing *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367 (6th Cir.1993). Real Estate One also argues that the fraud allegations are insufficient because, to aid or abet fraud, the plaintiff must allege that the accused defendant knew of the fraud, but the knowledge must be on the part of the corporate entity, not the individual actors. Finally, Real Estate One contends that the negligent hiring and supervision claims must be dismissed because there is no legal duty that flows from a real estate agent of the seller to the buyer's lender, and the plaintiff failed to plead a physical injury.

### 1. RICO liability

In *Davis v. Mutual Life Insurance Company of New York*, the Sixth Circuit discussed the limitations on the imposition of vicarious liability under RICO as deriving from the requirement of distinctness. The court first reiterated "the relatively uncontroversial premise that, for purposes of section 1962(c), a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Davis*, 6 F.3d at 377. The court then distinguished cases from other circuits disapproving of vicarious liability on the basis that the "master" in *respondeat superior* parlance, also was the "enterprise" under RICO, and the "servant" was the "person." Imposing vicarious liability under those circumstances, the court believed, would trench upon the distinctness requirement. *Id.* at 378–79. But the court did not impose a general bar against vicarious liability under RICO, as Real Estate One advocates here. Instead, the Sixth Circuit announced a narrow holding:

> The rule to be drawn from these cases is that plaintiffs may not use RICO to impose liability vicariously on corporate "enterprises," because to do so would violate the distinctness requirement. No such prohibition, however, prevents the imposition of liability vicariously on corporate "persons" on account of the acts of their agents, particularly where the corporation benefitted by those acts. Such a prohibition, if it existed, would prevent corporate persons from ever being found liable under RICO, since corporate principals may act only through their agents. Such a rule would be manifestly contrary to the intent of Congress, and we decline to adopt it.

*Id.* at 379. The court upheld a verdict against a corporation based on its agent's acts of conducting the affairs of *another* enterprise through a pattern of illegal activity, thereby imposing vicarious liability under RICO where doing so does not destroy the separation between the person and the enterprise and the plaintiff alleges benefit to the defendant from its agents' actions. *See also Gen. Motors Corp. v. Lopez de Arriortua*, 948 F.Supp. 670, 682 n. 9 (E.D.Mich.1996).

The question, then, becomes whether the plaintiff has pleaded adequately an agency relationship between Real Estate One and its real estate agents, Sweeney and Bazzi. The Court believes it has. As noted earlier, the plaintiff alleged that Real Estate One employed these individuals. First Am. Compl. ¶¶ 13(b), 19, 92. The determination of an agency relationship and the scope of the agent's actual, implied, or apparent authority is necessarily a fact-bound endeavor. *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 458 Mich. 540, 557, 581 N.W.2d 707, 716 (1998) (quoting *Saums v. Parfet*, 270 Mich. 165, 170–71, 258 N.W. 235 (1935)). Under Michigan

law, an employer is vicariously liable for "the wrongful acts of his servant committed while performing some duty within the scope of his employment, but is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control." *Weinstein v. Siemens,* 673 F.Supp.2d 533, 542 (E.D.Mich.2009) (internal citations and quotation marks omitted). Real Estate One's protestations that Bazzi and Sweeney were independent contractors certainly may constitute a valid defense to the RICO claim, but it does not undermine the soundness of the pleading—the amended complaint—as considered against a Rule 12(b)(6) challenge.

■ Last, in its earlier motion, Real Estate One argues that the plaintiff's RICO claim was filed out of time. The defendant reasons that the complaint was not filed until 2010, all the transactions involving Bazzi and Sweeney closed by 2005, and the RICO statute of limitations is four years. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 152, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (holding that civil RICO actions are subject to a four-year statute of limitations). The defendant further argues that the injury occurrence rule for when a cause of action accrues applies to civil RICO claims, as, according to the defendants, the Supreme Court will likely adopt this rule when it considers the issue. However, the rule in the Sixth Circuit, at least for the present, is that the statute of limitations does not begin to run until "a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.,* 151 Fed.Appx. 433, 435 (6th Cir.2005) (citing *Rotella v. Wood,* 528 U.S. 549, 553–55, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)); *see also Taylor Group v. ANR Storage Co.,* 24 Fed.Appx. 319, 325 (6th Cir.2001) ("The

limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury.") (*citing Rotella,* 528 U.S. at 554–55, 120 S.Ct. 1075). The plaintiff alleges that it did not discover the fraudulent scheme until 2007. That allegation is sufficient to preclude dismissal at this stage of the proceedings on statute of limitations grounds.

### 2. Fraud & Civil Conspiracy

It is not apparent from its motions that Real Estate One intended to challenge the plaintiff's claims against it for fraud and civil conspiracy. However, in a reply brief, Real Estate One states that it equated those claims with the RICO allegations. The basis for its challenge to the fraud claims mirrors the attack on the RICO count: that Real Estate One should not be held accountable for the intentional torts of its employees.

The defendant relies on a line of Michigan cases holding that an employer is not responsible for the violent sexual assaults of its employee absent notice that the employee has violent tendencies. *See Hamed v. Wayne County,* 490 Mich. 1, 803 N.W.2d 237 (2011); *Brown v. Brown,* 478 Mich. 545, 555, 739 N.W.2d 313 (2007). However, the general rule under Michigan law is that "a master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment" but "is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control." *McMullen v. Duddles,* 405 F.Supp.2d 826, 830 (W.D.Mich.2005) (internal quotations and citations omitted); *Rogers v. J.B. Hunt Transp., Inc.,* 466 Mich. 645, 650–51, 649 N.W.2d 23 (2002).

■ The amended complaint alleges conduct by Sweeney and Bazzi that makes

out the elements of common law fraud—(1) a material misrepresentation; (2) that was false; (3) knowledge of the falsity; (4) the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) a consequential injury. *Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976). The amended complaint also contains allegations that Sweeney and Bazzi committed the fraudulent acts as real estate agents, and they received commissions that were shared with their employer. The acts of engaging in real estate transactions, albeit fraudulent ones, can fairly be said to be within the scope of Sweeney's and Bazzi's employment. The amended complaint states a fraud claim against their employer, Real Estate One.

 The same cannot be said of the civil conspiracy allegations. A civil conspiracy is "a combination of two or more persons, [who] by some concerted action, [agree] to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.,* 194 Mich. App. 300, 313, 486 N.W.2d 351 (1992); *see also Ahlers v. Schebil,* 188 F.3d 365, 374 (6th Cir.1999); *Kennedy v. R.W.C., Inc.,* 359 F.Supp.2d 636, 643 (E.D.Mich.2005); *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 257 Mich.App. 365, 384, 670 N.W.2d 569 (2003). A conspiracy requires proof of an intentional agreement. *See Temborius v. Slatkin,* 157 Mich.App. 587, 599–600, 403 N.W.2d 821, 827–28 (1986); *Kennedy,* 359 F.Supp.2d at 643. Under Michigan law, "[i]t is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference." *Ibid.; see also Wysong Corp. v. M.I. Indus.,* 412 F.Supp.2d 612, 632 (E.D.Mich.2005); *cf. Robinson v. Township of Waterford,* 883 F.2d 75, 1989 WL 94569, *7 (6th Cir.1989)

("the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives.").

 However, "[i]t is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim....' " *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987). Therefore, "pleading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox,* 524 F.3d 770, 776 (6th Cir.2008); *see also Flores v. Lenawee Cnty.,* No. 07–11288, 2008 WL 4601404, at *11 (E.D.Mich. Oct. 15, 2008). Furthermore, where the underlying tort is fraudulent in nature, courts have required that plaintiffs meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) to withstand dismissal. *See Tramontana v. May,* No. 02–10234 & 02–10012, 2004 WL 539065, at *7 (E.D.Mich. Mar. 16, 2004).

 The amended complaint presents the following allegations in favor of the civil conspiracy claim:

225. By [its] conduct alleged above, [...] Real Estate One, through [its] agents, conspired to acquire and gain control over mortgage loan proceeds while concealing the true nature of the loan transactions, participate in the laundering of the mortgage loan proceeds illegally obtained, engage in both straw and ghost loan transactions, and make misrepresentations about the conduct of themselves and others, upon which Fremont reasonably relied.

226. As a direct and proximate cause of the actions taken in furtherance of this

conspiracy, Fremont was damaged in an amount not yet determined, but believed to be in excess of $20,000,000.

First Am. Compl. ¶¶ 225–226.

These allegations do not satisfy the stringent pleading requirement. Reading the complaint liberally, the plaintiff has alleged a scheme whereby many actors worked together to obtain mortgage funds fraudulently and one can infer an agreement from this large-scale group effort. However, the plaintiff has not alleged any acts by Real Estate One, beyond its standard activities as a realtor, tending to show an agreement. Therefore, the Court will dismiss the conspiracy claim against Real Estate One.

### 3. Negligence

Real Estate One argues that the amended complaint fails to state a claim of negligence and negligent hiring or supervision because there is no duty that flows from a real estate agent of a seller to the buyer's lender. If there is no duty, it says, there can be no negligence. There is only a duty on the part of the real estate agent to the person the agent represents. Referring to *Henry v. The Dow Chem. Co.*, 473 Mich. 63, 701 N.W.2d 684 (2005), Real Estate One also contends that in order to plead a claim of negligent hiring or negligent supervision, the plaintiff must plead a physical injury.

 The plaintiff acknowledges that its negligence theory is a novel one, and there is no case law to support it. However, the plaintiff argues that under general Michigan law, one must look to the relationship of the parties to determine whether there is a duty. The plaintiff argues that there was a pre-existing relationship between Real Estate One and Fremont since Real Estate One knew that Fremont was the lender in each of the listed transactions. The plaintiff contends there was a moral responsibility to act fairly with respect to Fremont, and therefore the plaintiff believes we should recognize a cause of action that holds Real Estate One accountable for its failure to exercise due care to engage and monitor its sales agents. This Court's task in such a case is to determine from "all relevant data" what the state's highest court would decide. *See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985)). "Relevant data" includes the state's intermediate appellate court decisions, *ibid.*, as well as the state supreme court's relevant dicta, "restatements of law, law review commentaries, and the 'majority rule' among other states." *Angelotta v. American Broad. Corp.*, 820 F.2d 806, 807 (6th Cir.1987).

 "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Fultz v. Union–Commerce Assoc.*, 470 Mich. 460, 463, 683 N.W.2d 587, 590 (2004). Absent a legal duty, there is no liability. *Beaty v. Hertzberg & Golden, PC*, 456 Mich. 247, 262, 571 N.W.2d 716, 723 (1997) ("It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff"). "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning v. Alfono*, 400 Mich. 425, 438–39, 254 N.W.2d 759, 765 (1977). This relationship must be one that "the law or society views as sufficiently strong" to require action or prohibit inaction by another. *Rakowski v. Sarb*, 269 Mich.App. 619, 631, 713 N.W.2d 787 (2006) (quoting *Samson v. Saginaw Professional Bldg., Inc.*, 393 Mich. 393, 406, 224 N.W.2d 843, 849 (1975)). Duties may be created by statute, ordinance, contract, common law, or public policy. Under Michigan law, the existence of a general duty is a question to be decided by the

court. *Simko v. Blake,* 448 Mich. 648, 655, 532 N.W.2d 842, 846 (1995).

■ Determining whether a legal duty ought to be imposed requires a court to balance the utility of the actor's conduct and the magnitude of the risk involved. As the Michigan Supreme Court explained in *Moning:*

> The balancing of the magnitude of the risk and the utility of the actor's conduct requires a consideration by the court and jury of the societal interests involved. The issue of negligence may be removed from jury consideration if the court concludes that overriding considerations of public policy require that a particular view be adopted and applied in all cases.

*Id.* at 450, 254 N.W.2d at 770 (footnote omitted). The factors that courts consider in striking that balance include "the foreseeability of the harm, the degree of certainty of injury, the closeness of connection between the conduct and injury, the moral blame attached to the conduct, the policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach." *Babula v. Robertson,* 212 Mich.App. 45, 49, 536 N.W.2d 834, 837 (1995) (citing *Buczkowski v. McKay,* 441 Mich. 96, 101, n. 4, 490 N.W.2d 330 (1992)); *see also Dresser v. Cradle of Hope Adoption Center, Inc.,* 358 F.Supp.2d 620, 639 (E.D.Mich.2005); *Rakowski,* 269 Mich.App. at 629, 713 N.W.2d at 795.

■ The essence of the plaintiff's negligence claim is that Real Estate One carelessly submitted defective purchase agreements to support fourteen of the mortgage transactions the plaintiff approved. Under Michigan law, a real estate agent generally is the agent of the seller. *Andrie v. Chrystal–Anderson & Associates Realtors, Inc.,* 187 Mich.App. 333, 335, 466 N.W.2d 393, 394 (1991) ("Real estate brokers and salesmen are the agents of the seller, their principal." (citing *McMullen v. Joldersma,* 174 Mich.App. 207, 212, 435 N.W.2d 428 (1988); *Minchella v. Fredericks,* 138 Mich. App. 462, 467–468, 360 N.W.2d 896 (1984))). Because buyers and sellers frequently find themselves in a commercially competitive relationship with each other, the Michigan courts have declined to impose a duty of due care on a seller's agent in favor of a buyer. *Id.* at 337, 466 N.W.2d at 395 (reasoning that "[i]n negotiating a real estate sale, any relationship between the seller's agent and the potential buyer is a commercially antagonistic one, with each side working for his best advantage and not for the benefit of the other"); *Seit–Olsen v. Reliance Appraisals, LLC,* 2006 WL 1113936 at *5 (Mich. App. April 27, 2006); *Foglia v. Evola,* 2001 WL 920084 at *4 (Mich.App. August 14, 2001).

■ The plaintiff contends, however, that Real Estate One was the buyers' agent in the fourteen transactions involving Bazzi or Sweeney, and therefore the agent owed a duty to its buyer's—i.e., its principal's—lender. The Court believes that such a distinction would make no difference to the Michigan courts. There is no question that the real estate agent owes a duty of care to its principal, whether that be the buyer or seller. However, that duty does not extend to everyone the buyer deals with during the transaction. The relationship between a buyer and his lender frequently "is a commercially antagonistic one," since each side of *that* transaction is competing for terms favorable to his own interests. Finding a legal duty (other than those found in the rules prohibiting fraud) running from a buyer's agent to the buyer's lender would contradict the reasoning in *Andrie,* and likely would not be endorsed by the Michigan courts. This Court, therefore, declines to impose such a duty in this case.

Because there is no legal duty of care owed by a real estate agent to a buyer's lender to convey proper purchase documents in support of a mortgage request, there can be no negligence claim premised on such conduct, and Real Estate One's motion to dismiss on that ground will be granted. Since there is no duty, the Court need not address the dubious argument premised on *Henry v. The Dow Chem. Co.*, 473 Mich. 63, 701 N.W.2d 684 (2005), that an injury must be physical in nature to support a negligence claim. (*Henry* merely held that the injury required to support a claim of negligence must not be "derivative of a *possible, future* injury rather than an *actual, present* injury." *Id.* at 78, 701 N.W.2d at 691.).

### 4. Negligent Hiring

The plaintiff also premises a claim against Real Estate One on their acts of hiring dishonest agents (Sweeney and Bazzi) and unleashing them upon the unsuspecting public without properly monitoring their activity. Another judge of this court has summarized the relevant governing law as follows:

> Michigan has never recognized a claim for negligent hiring by holding an employer liable for an employee's acts resulting in economic injury or for any kind of fraudulent acts. While Michigan courts have recognized a cause of action for negligent hiring where an employee commits a foreseeable act of physical violence; *see Bradley v. Stevens*, 329 Mich. 556, 46 N.W.2d 382 (1951); Michigan has not extended the concept to include what is alleged in these cases. Accordingly, this court declines to extend negligent hiring to include economic injuries.

*Vennittilli v. Primerica, Inc.*, 943 F.Supp. 793, 797 (E.D.Mich.1996). The Court is not persuaded by the plaintiff's attempt to distinguish *Vennittilli* from the present facts.

The *Vennittilli* court did not dismiss related negligent supervision claims based on allegations that the defendant's employees sold the plaintiffs fraudulent investment contracts. The court found that the defendants' ground for the motion—that the claim was superseded by the Michigan securities laws—did not bar the claims in that case, where no Michigan securities law claim was made. The court did not address the viability of the cause of action beyond that. However, this Court finds that where a real estate agency has no duty of care toward a buyer's lender, there likewise can be no duty in favor of the lender properly to hire, train, or supervise the agent's employees. Therefore, Real Estate One's motion to dismiss all the negligence-based claims will be granted.

### C. JP Morgan Chase Bank

The plaintiff's claims against Chase are found in count 17 of the first amended complaint, where the plaintiff alleges that Chase was negligent and aided and abetted the breach of a fiduciary duty. The plaintiff contends that the checking accounts some of the defendants opened at Chase displayed such unusual activity that Chase, which had a duty under federal regulations to "know their customer," *see* 31 C.F.R. § 1020.220(a)-(c), should have detected fraudulent activity and interdicted it or warned the plaintiff. The plaintiff alleges that, assuming the bank complied with the federal requirements, it would have had actual knowledge of Ronnie Duke's activities. The plaintiff says that Chase aided and abetted the fraudulent transactions by actually processing the transactions when they were drawn on the bank.

### 1. Negligence

The plaintiff relies on *Lerner v. Fleet Bank*, 459 F.3d 273 (2d Cir.2006), to support its claim that a bank owed a duty

to make inquiry when it has notice that funds deposited in fiduciary accounts are being diverted. *See id.* at 287–88. *Lerner*, however, was decided under New York law. The Court finds that the general statement of Michigan law articulated by the court in *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F.Supp.2d 875 (W.D.Mich.2010), governs the present case: "Michigan law, in accord with the universal rule in this country, holds that a bank's relationship is with its customer and that the bank owes third parties no duty of care to monitor a customer's activities." *Id.* at 907 (citing *Columbia Land Co. v. Empson*, 305 Mich. 220, 229, 9 N.W.2d 452, 455 (1943); *Portage Alum. Co. v. Kentwood Nat'l Bank*, 106 Mich. App. 290, 296–97, 307 N.W.2d 761, 764–65 (1981)).

The plaintiff's negligence claim is based on the alleged duty of Chase to police the banking activities of Duke and his cohorts. But Michigan law recognizes no such duty. Even the *Lerner* decision applying foreign law holds that the level of knowledge necessary to hold a bank accountable for the criminal conduct of its customers is greater than that required for a claim of negligence. *See El Camino*, 722 F.Supp.2d at 907–08 (observing that "[t]he Second Circuit has recently reaffirmed that the appropriate showing of *scienter* for aiding-and-abetting liability is actual knowledge, and that proof that a bank 'suspected fraudulent activity' does not suffice" (citing *Lerner*, 459 F.3d at 292–93)). Therefore, the plaintiff's negligence claim against Chase must fail.

### 2. Aiding and Abetting Breach of Fiduciary Duty

The dimensions of an aiding and abetting claim were thoroughly explored by the court in *El Camino*, which this Court finds to be a useful template for adjudicating Chase's motion. *See El Camino*, 722 F.Supp.2d at 901–14. To begin, "the court must first determine the contours of the primary violation on which the secondary liability is alleged to be based." *Id.* at 914 (quoting *Kolbeck v. LIT Amer., Inc.*, 939 F.Supp. 240, 245 (S.D.N.Y.1996)).

 Under Michigan law, fiduciary duties arise from "the relation subsisting between two persons of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith." *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 106 Mich.App. 290, 294, 307 N.W.2d 761 (1981). There are certain relationships that automatically yield a fiduciary obligation: "trustees to beneficiaries, guardians to wards, attorneys to clients, and doctors to patients." *Ibid.* Beyond those, "whether there exists a confidential relationship apart from a well-defined fiduciary category is a question of fact." *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich.App. 509, 515, 309 N.W.2d 645 (1981). In the Sixth Circuit, there is no rule that a specific relationship may never be the basis of fiduciary obligations; rather, courts must look to the actual relationship between the parties. *See ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 715 (6th Cir. 2005).

 The plaintiff alleges that it enjoyed a fiduciary relationship with the closing agents that maintained accounts with Chase: First Escrow, Lawyers Escrow, Liberty Title, and Nations Title. The plaintiff wired loan proceeds to those agents with the understanding that the funds would not be distributed until the loans were properly documented and secured. The plaintiff alleges that instead, the closing agents distributed funds based on fraudulent transactions. The amended complaint pleads a breach of fiduciary duty by the closing agents.

■ Michigan law does recognize the prospect of liability by one who joins in a conspiracy or enterprise with another who breaches a fiduciary duty to third party. *See In re Goldman Estate,* 236 Mich.App. 517, 521–22, 601 N.W.2d 126, 129 (1999) (stating that "[t]hird parties that profit from a fiduciary's breach can be liable under certain circumstances," and "a third party that knowingly participated in the defendant's misappropriation of trade secrets from his employer was liable for both actual damages and unjust enrichment damages" (quoting *Hayes–Albion Corp. v. Kuberski,* 421 Mich. 170, 187, 364 N.W.2d 609 (1984))). The Michigan Supreme Court has not recognized a cause of action for aiding and abetting the breach of a fiduciary duty; however, after an exhaustive analysis of Michigan law on the subject, the *El Camino* court concluded that the state supreme court would adopt rules for secondary liability consistent with section 876(b) of the Second Restatement of Torts. *El Camino,* 722 F.Supp.2d at 897, 901. Section 876 reads as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979).

The aiding and abetting theory is reflected in Restatement section 876(b). Therefore, to avoid dismissal, the plaintiff must plead that the closing agents owed a duty to the plaintiff, the fiduciaries breached their duties, defendant Chase knew of the breach, and Chase provided the fiduciaries with substantial assistance. *See Laethem Equip. Co. v. Deere & Co.,* No. 05–10113, 2007 WL 2433980, at *19 (E.D.Mich. Aug. 14, 2007); *Prime Fin. Servs., LLC v. Vinton,* 279 Mich.App. 245, 277, 761 N.W.2d 694, 714 (2008).

■ With respect to the knowledge requirement, courts applying Michigan law have held that "the alleged abettor is required to have the same degree of *scienter* as the person committing the actual fraud." *Chase Bank v. Grant Thornton,* No. 236237, 2003 WL 21350362, at *4 (Mich.Ct.App. June 10, 2003); *see also Carson Fischer, PLC v. Standard Federal Bank,* 2005 WL 292343, at *6 (Mich.App. 2005), *rev'd on other grounds,* 475 Mich. 851, 713 N.W.2d 265 (2006). Actual knowledge of the tort itself is necessary to impose liability on the alleged aider and abettor. *El Camino,* 722 F.Supp.2d at 906–07, 910 (determining that the Michigan Supreme Court likely would adopt an actual knowledge requirement, based on Michigan case law construing "knowledge" in other contexts, concerning secondary liability, imposing obligations on banks, and other jurisdictions' case law); *see also Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292–93 (2d Cir.2006) (holding that a bank's knowledge that its customer was engaged in improper conduct was not sufficient; instead, the plaintiff must show that bank officials "actually knew that the fraud was, in fact, occurring"). Alleging that the defendant "knew or should have known" of the illegal scheme is not sufficient. *Carson Fischer, PLC,* 2005 WL 292343, at *6, *rev'd on other grounds,* 475 Mich. 851, 713 N.W.2d 265 (2006). The *El Camino* court concluded that the Michigan Supreme Court likely would not adopt a lesser *scienter* requirement, which was derived

from federal securities cases that had been rejected by the United States Supreme Court, but pointed out that even that standard required knowledge of the specific wrongdoing. *El Camino,* 722 F.Supp.2d at 910.

The Restatement approach also requires the plaintiff to show that the alleged aider and abettor provided "substantial assistance or encouragement" to the tortfeasor. Restatement Torts 2d, § 876(b). "The plaintiff [must] show that the secondary party proximately caused the violation, or, in other words, that the encouragement or assistance was a substantial factor in causing the tort.'" *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 537 (6th Cir.2000) (quoting *K & S P'ship v. Continental Bank, N.A.,* 952 F.2d 971, 979 (8th Cir.1991)). Therefore, the plaintiff must demonstrate both but-for and proximate causation. *See El Camino,* 722 F.Supp.2d at 910.

In addition, the substantial assistance must "further the fraud itself, and not merely constitute general aid to the tortfeasor." *Id.* at 910–11, 914. The *El Camino* court explained that "substantial assistance means something more than merely providing routine professional services that aid the tortfeasor in remaining in business, but do not proximately cause the plaintiff's harm." *Id.* at 911. "[A] bank does not aid and abet its customer's wrongdoing merely by providing routine banking services to its customers." *Id.* at 911 (citing *Aetna Cas.,* 219 F.3d at 546 (discussing the extension of loans); *see also Bane v. Sigmundr Exploration Corp.,* 848 F.2d 579, 582 (5th Cir.1988) (collecting cases); *Rosner v. Bank of China,* 528 F.Supp.2d 419, 426–27 (S.D.N.Y.2007) (discussing the general rule); *Weiss v. Nat'l Westminster Bank, PLC,* 453 F.Supp.2d 609, 621–22 (E.D.N.Y.2006) (discussing the maintenance of a bank account, transfer of funds, and repeated wire transfers and

declining to find substantial assistance)); *cf. In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir.2006) ("[O]rdinary business transactions a bank performs for a customer can satisfy the substantial assistance element ... if the bank actually knew that those transactions were assisting the customer in committing a specific tort. Knowledge is the crucial element." (internal citations and quotation marks omitted)). A failure to act or a failure to warn the plaintiff of suspected questionable conduct does not constitute substantial assistance, unless the defendant owed the plaintiff an independent duty. *Glidden Co. v. Jandernoa,* 5 F.Supp.2d 541, 556–57 (W.D.Mich.1998) ("A bank cannot be held liable for aiding and abetting ... breach of fiduciary duty merely on that basis that it knew that the party it was lending to was not being forthright in its dealings with others. Where ... there are no allegations or evidence that the Banks themselves made any misrepresentations or took any actions to affirmatively hide their client's misdeeds, there is no basis for holding the Banks liable for aiding and abetting...."); *El Camino,* 722 F.Supp.2d at 911–12, 914; *Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 247 (S.D.N.Y.1996) ("[A] failure to investigate, i.e., constructive knowledge, is not enough to support a claim for aiding and abetting a fiduciary absent the existence of a fiduciary duty running from defendant to plaintiff").

Under Michigan law, then, to withstand Chase's motion to dismiss, the plaintiff must allege in its amended complaint that (1) some person or entity breached a fiduciary owed to the plaintiff; (2) Chase actually knew of the breach; and (3) Chase gave the primary tortfeasor substantial assistance that proximately caused the plaintiff's loss. *El Camino,* 722 F.Supp.2d at 897; Restatement Torts 2d, § 876(b). The amended complaint contains the following allegations against Chase:

540. As closing or title agents, First Escrow, Lawyers Escrow, Liberty Title, and Nations Title owed fiduciary duties to Fremont.

541. Through the activity in the Chase Accounts described above, First Escrow, Lawyers Escrow, Liberty Title, and Nations Title breached their fiduciary duties to Fremont and the other mortgage lenders by converting mortgage proceeds and laundering the proceeds for their own use and enjoyment.

542. Through the activity in the Chase Accounts described above, Chase knew that First Escrow, Lawyers Escrow, Liberty Title, and Nations Title were breaching their fiduciary duties to Fremont and other mortgage lenders.

543. By failing to recognize, detect, stop or refrain from participating in these transactions, or to prevent money laundering from taking place in the Chase Accounts, Chase substantially assisted First Escrow, Lawyers Escrow, Liberty Title, and Nations Title in breaching their fiduciary duties.

544. As a direct and proximate result of these breaches of fiduciary duty, Fremont was injured and suffered damages in an amount not yet determined, but believed to be in excess of $13,000,000.

First Am. Compl. ¶¶ 540–544.

The plaintiff has listed each of the three elements of an aiding and abetting claim, but it has alleged the *scienter* element only in conclusory fashion. " '[A] legal conclusion couched as a factual allegation' need not be accepted as true" when assessing a motion to dismiss under Rule 12(b)(6). *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 680 (6th Cir.2011) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Instead, Fremont must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Fremont has alleged that several account transactions by the closing agents were "inconsistent with the type of activity in which an escrow company would be expected to engage and suggested a high probability of illegal conduct taking place in the Chase Accounts," and that "[a]s a result, Chase had a duty to make reasonable inquiry to determine whether there was a reasonable explanation for these transactions." First Am. Compl. ¶ 534. Those facts, however, do not support a "plausible" inference of actual knowledge. "A plaintiff falls short if she pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct....' " *Albrecht v. Treon,* 617 F.3d 890, 893 (6th Cir.2010) (quoting *Iqbal,* 129 S.Ct. at 1949, 1950).

Moreover, Fremont has not alleged any affirmative action by Chase that provided substantial assistance to the closing agents' breach of their fiduciary duties; the amended complaint alleges only a failure to act. A failure to act generally does not constitute substantial assistance. *Glidden,* 5 F.Supp.2d at 556–57.

The Court concludes, therefore, that the amended complaint fails to state a claim against Chase for aiding and abetting a breach of fiduciary duty.

### III.

The Court finds that the plaintiff has stated valid claims in its first amended complaint against Timothy Baker, KeyAppraisers.com LLC, and OwnerRealty.com for violating RICO; and against Real Estate One for violating RICO and fraud. The amended complaint fails to state claims against Real Estate One for civil conspiracy, negligent hiring, or negligent

retention. The amended complaint also fails to state claims against JP Morgan Chase.

Accordingly, it is **ORDERED** that the motions to dismiss and amended motion to dismiss by defendant Real Estate One, Inc. [dkt. # 11, 83, 92] are **GRANTED IN PART AND DENIED IN PART.** The claims in the amended complaint against Real Estate One, Inc. for civil conspiracy, negligent hiring, or negligent retention are **DISMISSED;** and the motions are **DENIED** in all other respects.

It is further **ORDERED** that the motion to dismiss by defendants Timothy Baker, KeyAppraisers.com LLC, and OwnerRealty.com [dkt. # 108] is **DENIED.**

It is further **ORDERED** that the motion to dismiss by defendant JP Morgan Chase Bank [dkt. # 127] is **GRANTED.** Count XVII of the amended complaint is **DISMISSED.**